IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 1:11-CR-537-TCB-LTW |
| v. | |
| EPIFANIA SANCHEZ DELAROSA, | |
| Defendant. | |

## **MAGISTRATE JUDGE'S ORDER AND REPORT AND RECOMMENDATION**

Pending before this Court is Defendant Epifania Sanchez Delarosa's Motion to Suppress Evidence Seized from her Home Pursuant to a Search Warrant (Docket Entry 101) and Motion to Adopt Co-Defendant's Preliminary Motion to Suppress Intercepted Communications (Wiretap Evidence) (Docket Entry 102). Having considered Defendant Delarosa's motions and all supporting documents submitted, and for the reasons set forth below, this Court **RECOMMENDS** that Defendant's Motion to Suppress Evidence Seized From her Home Pursuant to a Search Warrant be **DENIED**. Docket Entry [101]. Additionally, this Court's Oral Order allowing Defendant Delarosa to adopt Co-Defendant Villareal's Preliminary Motion to Suppress Intercepted Communications (Wiretap Evidence) is **VACATED**. Docket Entry [111]. Instead,

Delarosa's Motion to Adopt Co-Defendant's Villareal's Preliminary Motion to Suppress Intercepted Communications (Wiretap Evidence) is **DENIED**. Docket Entry [102]. However, Defendant Delarosa may file, her own motion to suppress wiretap evidence if she desires, **within fourteen (14) days of the entry date of this Order**. In the event that the Defendant Delarosa does not file a particularized motion to suppress wiretap evidence as described in this Order, the Clerk of Court is **DIRECTED** to resubmit this case to the undersigned within twenty (20) days of the entry date of this Order and Report and Recommendation so that this Court may certify the case ready for trial.

## **DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM HER HOME PURSUANT TO A SEARCH WARRANT**

On December 6, 2011, the grand jury indicted Defendant Epifania Sanchez Delarosa for conspiring with others to knowingly persuade individuals to travel in interstate and foreign commerce to engage in prostitution in violation of 21 U.S.C. § 2422(a) and to encourage aliens to enter and reside in the United States knowing and in reckless disregard of the fact that doing so would be in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and (B)(i); one count of aiding and abetting another to knowingly persuade, induce, entice or coerce an individual to travel in interstate commerce from North Carolina to Georgia to engage in prostitution in violation of 18 U.S.C. § 2422(a);

AO 72A
(Rev.8/82)

and one count of aiding and abetting another to knowingly persuade, induce, entice or coerce an individual to travel in interstate commerce from Alabama to Georgia to engage in prostitution in violation of 18 U.S.C. § 2422(a).

In Defendant's Motion to Suppress Evidence Seized From her Home Pursuant to a Search Warrant, Defendant contends evidence seized pursuant to a warrant to search her home should be suppressed because the warrant was not supported by probable cause and because there was no nexus between the criminal activity alleged in the warrant and her home. Defendant also contends the Court should hold a hearing to inquire into these matters.

In attempting to ensure that search warrant affidavits comply with the Fourth Amendment's prohibition against unreasonable searches and seizures resulting from warrants issued without probable cause, the issuing magistrate "is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Miller, 24 F.3d 1357, 1361 (1994). "[P]robable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Gates, 462 U.S. at

3

241; Miller, 24 F.3d at 1361. "Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." Gates, 462 U.S. at 241; Miller, 24 F.3d at 1361. A reviewing court's duty is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Gates, 462 U.S. at 238. Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location. United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999).

Probable cause to search a residence requires some nexus between the premises and the alleged crime. United States v. Bradley, 644 F.3d 1213, 1263 (11th Cir. 2011). The nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation. Bradley, 644 F.3d at 1263. A police officer's expectation, based on prior experience and the specific circumstances of the alleged crime, that the evidence is likely to be found in a suspect's residence satisfies probable cause. Bradley, 644 F.3d at 1263-64. It is not necessary to find that the residence is a locus of the crime or for the agents to

have procured specific evidence that relevant records would certainly be found there. Bradley, 644 F.3d at 1264.

In this case, ample statements within the warrant affidavit support a finding of probable cause that evidence of a crime would be found in Defendant's home. The warrant affidavit supports the notion that Defendant committed a crime, that evidence of the crime is capable of being hidden in Defendant's residence, and, based on Special Agent Woodard's experience, that certain items in connection with Defendant's alleged crimes should be expected to be found in Defendant's residence. Here, the affidavit reveals that Charles Woodard is an experienced Special Agent who has experience investigating the crimes with which Defendant is charged. Special Agent Woodard has served with the United States Immigration and Customs Enforcement (ICE), Homeland Security Investigations for five years and formerly served as a police officer for seven years. (Woodard Aff. ¶¶ 1-3). In his capacity as a Special Agent, he has been involved in investigations relating to the trafficking of humans into the United States and relating to victims who were coerced and/or enticed into performing commercial sex acts. (Woodard Aff. ¶¶ 2-3).

Additionally, based on Special Agent Woodard's statements within the affidavit, there was a more than a fair probability that Defendant harbored aliens for prostitution

5

and encouraged and enticed individuals to travel in interstate commerce in order to engage in commercial sex acts. First, cooperating sources advised Special Agent Woodard that Defendant owned a brothel in Legacy Commons Apartment Complex and another in The Falls at Gwinnett Place Apartment Complex. (Woodard Aff. ¶¶ 14, 48, 61). Moreover, agents intercepted a phone call in which Defendant gave directions to her brothel on Peachtree Industrial Boulevard in the Dunwoody Apartments. (Woodard Aff. ¶ 66). Similarly, confidential informants, cooperating witnesses, and undercover agents provided details as to how the brothels operated and how much fifteen minute sessions with the prostitutes would cost. (Woodard Aff. ¶¶ 11-18, 30-31, 61). Camera surveillance and physical surveillance by agents at all three brothel locations showed male visitors arriving and leaving in twenty minute increments or less. (Woodard Aff. ¶¶ 35-37, 42-45, 52-57, 73-77). Based on Special Agent Woodard's experience and training, he believed that the male visitors were clients of the prostitution business. (Woodard Aff. ¶¶ 35-37, 42-45, 52-57, 73-77). Various investigative methods also showed women leaving and being dropped off at the alleged brothels, who, based on Agent Woodward's experience and the times of their arrivals and departures, are believed to be prostitutes. (Woodard Aff. ¶¶ 49-51).

Furthermore, Special Agent Woodard's statements show a fair probability that

illegal aliens and citizens from states outside of Georgia were used as prostitutes. Law enforcement agents intercepted cellular telephone communications between Defendant Delarosa and another individual who Federal Bureau of Investigation agents believed to be a madam discussing the affect of recently enacted immigration laws in Georgia, the fact that many of the prostitutes working for them were illegally in the United States, and that they brought prostitutes who lived in states other than Georgia to work in their houses of prostitution. (Woodard Aff. ¶¶ 10, 85, 91, 93). One witness told ICE agents during a traffic stop that the female passenger in his car was illegally present in the United States and working as a prostitute at The Falls location. (Woodard Aff. ¶ 61).

Special Agent Woodard's affidavit also connects Defendant's alleged residence at 6866 Windfaire Drive to her alleged crimes. Defendant is connected to the residence in that surveillance showed her returning to the residence each night and remaining there until the following day. (Woodard Aff. ¶ 81). In addition, based on Special Agent Woodard's training and experience, evidence of Defendant's alleged crimes could be expected to be located in Defendant's residence. According to Woodard, persons involved in the harboring of illegal aliens often keep in their homes identity documents, copies of altered forms of identity documents, birth certificates, forms of photo identification, social security cards, travel documents, as well as names and addresses

of their associates in books, papers, cellular telephones, and computers. (Woodard Aff. ¶ 82). Furthermore, individuals engaged in the promotion of prostitution often keep in their residences financial records regarding the movement of prostitution proceeds, documents pertaining to the transportation of women, documents pertaining to prostitution clients, documents relating to the medical treatment of prostitutes, and business cards. (Woodard Aff. ¶ 82). Additionally, Special Agent Woodward was aware of an intercepted call between Defendant and another alleged madam in which Defendant Delarosa indicated that she keeps a book cataloging prostitutes who work for her and that she puts a "yes" or "no" in the book, based on "how the girls are." (Woodard Aff. ¶¶ 95-96). In Special Agent Woodard's experience, such books are usually kept in the madam's residence. (Woodard Aff. ¶ 96). Because there was a fair probability that contraband or evidence of a crime could be found in Defendant's residence located at 6866 Windfaire Drive, the magistrate properly issued the warrant for the search. See Bradley, 644 F.3d at 1263-64 (holding that a police officer's expectation, based on prior experience and the specific circumstances of the alleged crime, that evidence would likely be found in a suspect's residence, satisfies probable cause); United States v. Jenkins, 901 F.2d 1075, 1081 (11th Cir. 1990) (holding that probable cause supported warrant where there was probable cause that the defendant

8

committed underlying crime (bank robbery), stolen items were capable of being hidden in a residence, and FBI agent with ten years experience investigating bank robberies stated that people hide stolen items in their home). Accordingly, Defendant's Motion to Suppress Evidence Seized From her Home Pursuant to a Search Warrant should be **DENIED**.[1] Docket Entry [101].

## **DEFENDANT SANCHEZ DELAROSA'S MOTION TO ADOPT CO-DEFENDANT'S PRELIMINARY MOTION TO SUPPRESS INTERCEPTED COMMUNICATIONS (WIRETAP EVIDENCE)**

In Defendant's Motion to Adopt Co-Defendant's Preliminary Motion to Suppress Intercepted Communications (Wiretap Evidence) (Docket Entry 102), Defendant Delarosa argues she should be permitted to adopt Co-Defendant, Saul Morales-Villareal's Motion to Suppress Wiretap Evidence. In Co-Defendant Villareal's Motion to Suppress Wiretap Evidence, Villareal argued the original affidavit supporting the May 10, 2011 application for a wire tap of target telephone number one was not

---

[1] Defendant also requested a hearing "to inquire into these matters." Defendant, however, does not provide any authority showing that she is entitled to a hearing under these circumstances. While it is clear that the Court should honor a Defendant's request for a hearing when the Defendant makes a substantial preliminary showing that false statements were knowingly and intentionally included in the warrant affidavit, in this case, Defendant Delarosa presents no circumstances warranting a hearing. United States v. Gamory, 635 F.3d 480, 490 (11th Cir. 2011). Accordingly, Defendant's request for a hearing is **DENIED**.

sufficient because it did not explain why other investigatory procedures have been tried and failed, why they reasonably appear unlikely to succeed if tried, or why trying them would be too dangerous. Defendant Villareal further argued the use of wiretap technology was not justified because the Government had several viable alternatives for conducting its investigation. Defendant Villareal also argued the four extension applications that the Government filed to intercept target telephone numbers 2-5 were also insufficient because (1) they were the fruits of an improperly granted wiretap; and (2) they failed to set forth the requisite specificity as to why the additional requested interceptions were needed. Defendant Villareal also argued the record does not reveal an order sealing the recordings that were obtained pursuant to the Government's amended order of June 9, 2011, which authorized telephone interceptions for the period between June 9, 2011 and July 8, 2011.

Although this Court permitted Defendant Delarosa to adopt former Co-Defendant Villareal's Motion to Suppress Wiretap Evidence during the March 15, 2012 Pretrial Conference, upon further reflection, Delarosa' adoption of Co-Defendant Villareal's motion is not appropriate in this circumstance. Co-Defendant Villareal's Motion challenges the sufficiency of five different applications for wiretaps. Defendant Delarosa has presented an Affidavit indicating that she has standing to challenge the

10

June 9, 2011 Application for Amended Order to Intercept Wire Communications because she attests that she participated in the June 12, 2011 phone call that was intercepted. However, Defendant Delarosa fails to present any evidence or argument demonstrating that she has standing to challenge any of the other four wiretap applications. It is not clear to this Court if Defendant Delarosa is seeking to challenge any of the other four wiretap applications, given that the only conversation in which she claims to have participated in does not appear to have any connection to any of the other Applications and Orders. Under these circumstances, a more particularized motion is necessary. Therefore, this Court's Oral Order allowing Defendant Delarosa to adopt Co-Defendant Villareal's Preliminary Motion to Suppress Intercepted Communications (Wiretap Evidence) is **VACATED**. Docket Entry [102]. Instead, Delarosa's Motion to Adopt Co-Defendant Villareal's Preliminary Motion to Suppress Intercepted Communications (Wiretap Evidence) is **DENIED**. Docket Entry [102].

However, Defendant Delarosa may file her own motion to suppress wiretap evidence if she desires, <u>within fourteen (14) days of the entry date of this Order</u>. Defendant Delarosa's particularized motion, however, should explain which wiretap Application(s) she is challenging and specifically explain why she has standing to do so. To the extent that Defendant wishes to challenge wiretap Applications other than

11

the June 9, 2011 Application, Delarosa must submit an affidavit containing specific facts indicating why she is an aggrieved person with standing or file a request for a hearing in which counsel shall set forth her specific contention as to how she is an aggrieved person. Additionally, any arguments explaining why the wiretap evidence should be suppressed must be particularized to Defendant's own circumstances.

## CONCLUSION

Based on the foregoing reasons, this Court **RECOMMENDS** that Defendant's Motion to Suppress Evidence Seized From her Home Pursuant to a Search Warrant be **DENIED**. Docket Entry [101]. Additionally, this Court's Oral Order allowing Defendant to adopt Co-Defendant Villareal's Motion is **VACATED**. Docket Entry [111]. Instead, Defendant Delarosa's Motion to Adopt Co-Defendant's Preliminary Motion to Suppress Intercepted Communications (Wiretap Evidence) is **DENIED**. Docket Entry [102]. However, Defendant Delarosa may file her own motion to suppress wiretap evidence if she desires, <u>within fourteen (14) days of the entry date of this Order</u>. In the event that Defendant Delarosa does not file a particularized motion to suppress wiretap evidence as described in this Order, the Clerk of Court is **DIRECTED** to resubmit this case to the undersigned within twenty (20) days of the entry date of this Order and Report and Recommendation so that this Court may certify the case ready for

12

trial.

**SO ORDERED, REPORTED AND RECOMMENDED** this 27 day of August, 2012.

_____
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)